On this case on the docket 2-9-6-2-0-0-7-6-7, the people of the state of Colville, Appalachia, and Cleveland need Jeffrey L. Thomas, Defendant Appellant. Arguably on behalf of the Defendant Appellant, Mr. Richard J. Dvorak. And then on behalf of the Appalachian family, Mr. Stephen J. Cooper. Good morning, Counsel. Good morning. Mr. Dvorak. Counsel, and if it may please the Court, my name is Richard Dvorak and I am the attorney for the Defendant Jeffrey Thomas. Your Honors, I guess the first issue would be the jury waiver. And we argued it under plain error. And I don't think the state necessarily disagrees that if there was error, obviously they'd disagree with that, that it wouldn't amount to plain error because a denial of a right to a jury would be fundamental. Obviously the big question is whether or not it was error. And you agree, isn't that correct, that one doesn't necessarily need a written jury waiver for it to be valid, correct? I agree that is how the Illinois Supreme Court ruled. It seems like the plain language of the statute is contrary to that, but that is how they ruled. So how can the defendant here be shown not to have understandably waived his right to a jury when he specifically stated multiple times that he did not want a jury? There are four or five statements, I would think, and maybe you can address them, and I'm picking them from the colloquy that's part of the record. So the defendant said at one point, I ain't pick no jury, Your Honor. Another time he said, no, I don't want a jury trial. Then he said, I will say orally that I'm requesting a bench trial. And the court said, again, there are breaks in between the quotes, you wish to waive or give up your right to a jury trial and have a trial in front of a judge, or in this case me, is that correct? The defendant answered yes. And the court said, and is that what you wish to do, give up the right to 12 citizens and instead have the court decide? The defendant answers yes. And the final selection from the colloquy, on this jury waiver form, it says that you have been advised of your right to a trial by jury and that you want to waive or give up that right to a jury. Is that what you want to do? The defendant answered yes. How are any of those statements ambiguous? The ambiguity comes in the fact that he refused to do it in writing, which the statute says it must be in writing. And the reason that it's ambiguous is because the man is offering up a completely illogical reason for why he doesn't want to have it in writing. And I think it's incumbent upon the court to make sure that they know that this should be in writing. We want to make sure that you know it. And your trial has not come up yet. This is a status date. If you don't want to do it in writing, I'm going to explain to you why it's important to do it in writing so we can have no ambiguity whatsoever. That's what he did, right? That's what he did two weeks before the trial. But at the same time, he was refusing to do it in writing, which is actually what the statute says it must be in writing. And there was no attempt to explain that to by the way. I mean, obviously, the judge, you know, was faced with a difficult situation. I'm not criticizing the judge that he went way off the reservation here. I'm just saying because this is so fundamental, I do believe he had an obligation to make sure that he absolutely refused to put it in writing. But he handed him the jury waiver form and then took a brief recess. That's part of the record. That is correct. And with his attorney standing there. That is correct, and that was, you know, on a status date. It was not the final opportunity for him to do that. And he could have, you know, tried one more time before trial. What authority do you have, counsel, that would require the judge to do that one more time? Well, because I think the authority would be that you have to have it in writing before you go to trial. And if someone refuses to do that, then you should not proceed to trial without it. And what I'm just saying, based on unique facts in this case, he should have tried one more time before he did proceed to that venture. You said that the defendant had a completely illogical reason for not wishing to sign this jury waiver. Now, I read his comment at R83. He says in 84, he says, because, Your Honor, my name got up on the statement, and I don't even know my name, how my name got up on the statement when I ain't signed no statement. So I'm not going to sign a jury waiver. I ain't signing no statement. I mean, to me, that seems like a pretty logical reason. At trial, Exhibit Number 10 was introduced, which was the defendant's written statement, which I take this comment from the defendant to mean the written statement. Maybe I'm wrong. Maybe I shouldn't assume that, but I'm inferring that he's talking about the written statement that he made, that he's saying, I never made a written statement. I don't know how my name got on that written statement, so I'm not going to put my name on anything that you have, because he didn't want his signature out there. I mean, to me, that's a fairly logical reason if you're contesting that he made that written statement. Well, but that's a situation where he's talking about the police, where he's saying, I never signed anything, and now in court, they're trying to say that I did, and I've gotten a witness one way or the other. Whereas in open court, it's here. It's on recording. You've got a lawyer. You've got a judge. You've got a state's attorney. All we want you to do is write it down, and we'll acknowledge it for the record in open court. I mean, I don't know why that couldn't have been explained, that that's a much different situation than what happened at the police station. I understand you're contesting it, but here, we're going to do this in open court. The statute says it has to be in writing. This is why it's important to have it in writing. Let's do this. If you don't want to do it today, let's address this again before we actually go to trial. So, again, is there authority saying that if a defendant insists on a bench trial but doesn't want to sign a jury waiver, that the judge should say, sorry, no bench trial, you have to have a jury trial? Well, first of all, obviously there's no factual situation like this. This is a matter of first impression. No, but you indicated that in your brief. I'm sorry? You indicated that the solution here would have been just as I believe, maybe I didn't state it accurately, I believe you put that in your brief as to what the solution should be. I did, and that's based on the unique facts of this case. So obviously I cannot cite precedent that said it has to happen because it's never happened before. I'm saying based on the facts of this case, that's what should have happened. I'm not saying as a matter of law you can't take a jury waiver or have this colloquy at a status date before trial. If you unambiguously in writing waive, you can do that probably five months before trial, I'm assuming. I don't think there's any prohibition on that. Would it have been an error for the judge to proceed with a jury trial if he didn't? The defendant says I'm not signing a jury waiver. Is it error then for the judge to proceed to a jury trial? No. And that is because the law and the Constitution and the statutes taken together presume that you want a jury trial until it is waived in writing. And therefore, he would not have been, he would not have been error to proceed with a jury trial. I realize it puts everyone in a tough situation. This is not an easy solution. But I do think, based on the unique circumstances of this case, that more could have been done to ensure compliance with the statute. Isn't this invited error? By the defendant? Well, I don't think invited error necessarily is a good fit here because what we're talking about is whether someone understands they're right and waives it. So are you, you know, you could say it's an invited error to commit a crime and therefore that's why you're in front of the police to, and you wouldn't have had to raise, you wouldn't have to have waived Miranda in the first place. And that's the context. Just because something is the cause of something doesn't mean it's invited error. I think invited error more is a situation where, you know, you are purposefully injecting error into the case. I don't think that's the situation here. He's not purposefully injecting error. He's just being a little difficult in executing the jury labor. Are you contesting the admonishments at all? No. I mean, if this defendant had signed the waiver and handed it over to the judge, based upon the admonishments that we have in the record, the explanation of what a jury is, what a bench is, and the defendant, making sure the defendant understood those, the differences, and making sure that the court was, you know, confident that the defendant actually won the bench trial, this would be no error whatsoever, correct? Correct. Because it would be in writing and it would comply with the statute and there would be no ambiguity about that. So the only issue really here is the signing of the jury waiver, even though you're saying that the admonishments were fine and the trial judge did his job in making sure that the defendant understood the difference between a jury and a bench and that the defendant won a bench. Yes. But I want to clarify, though, that it's not like in people versus tools where I'm arguing the lack of a jury waiver is dispositive when there was a colloquy that said, I am waiving my right to a jury, because in this situation, the injection of ambiguity, so to speak, would be the, but I refuse to put it in writing. How, again, is that ambiguous? If he says definitively, I refuse to put it in writing, I mean, we're talking about somebody who is eligible for Class X sentencing. This is not a man who was in the system for the first time. So where, again, if you would try to explain where you see the ambiguity? The ambiguity is the fact that he's saying that I'm not going to comply with this statute, and the statute requires that it be in writing. And I think when that happens, a judge, I mean, the first try would be to try to get him writing one more time before a trial. But other than that, no, we're not going to go to trial without a jury waiver when you're saying you refuse to do the jury waiver. So the ambiguity is that he's recalcitrant. The ambiguity is that he's refusing to comply with a statute that requires, yes, I mean, in so many words, yes. Do you have the right to a jury? Do you have the right to a badge? In Illinois, you do. I'm not sure if it's by statute or by case law, but you do in Illinois, unlike the federal system. So, yes, you do have a right to a bench trial. So if you do have a right to a bench trial in Illinois, would this judge have not been violating that right by not giving this guy a bench trial? And would you not be standing there right now if, in fact, if that was the error that was presented to you, arguing that it was error not to allow him to have a bench trial? I would say no because, well, first of all, I may be arguing that because as a point of view, as a counsel, I think you have an obligation to make arguments on behalf of your clients. But not just exclusions, if you will. No, I understand. But I wouldn't be disingenuous to say that I wouldn't do that. However, I do think the basis for denying the bench trial would be that, you know, you could say to the defendant, sir, I'm sorry, but to have a bench trial, you have to wait for jury trial. Right. And it has to be in writing. This is what the statute says. And until you do that, I'm not going to proceed with a bench trial because I'm not going to have you give up your cherished constitutional right to a jury unless it's in writing and pursuant to the statute. What's the purpose of it being in writing? So there can be no argument later on like we're here today. Then I think, so that's where I think we may be on a slippery slope here because if we're going to say your steadfast refusal to deny, to comply with the statute, is okay if you orally do this, then I think we're getting very far afield of the plain language of the statute that says it must be in writing. I don't know how much more clear it can be than it has to be in writing, period. Now, I realize the Supreme Court and Toole started going a little far afoot from that, and you have no power to overturn that. But I think the scene goes even further than Toole, afar from the statute. And I think we still have to be moored by the original statute. But again, we have to look at each case individually and look at what the record reflects in terms of the test is whether he understood his right. Isn't that correct? That's the test that they came up with Toole, which is directly contrary to the statute, but I understand that's what the old Supreme Court came up with. And I think based on the unique facts of this case, I don't think it meets that test. Right. But obviously, the intent behind the statute had to be if it's in writing, then that would have enhanced or ensure the fact that someone would understand it. Correct. They could read the words as opposed to hearing them. Correct. All right. If there's no other questions on that, I'd like to just quickly move on to the other issue. Okay. The intent issue, whether that was reasonable doubt. I guess the fundamental thing I want to just reiterate is that nine, I don't know if you'd call them dime bags, whatever you'd call them with their amount to point, might be nickel bags. I can't really do the math. But they're small amounts, the personal hits for lack of better word. Just because they're individually packaged like that, certainly that's not enough to say it's not for personal use. You can easily use that personally, nine hits. And certainly it can be bought that way from somebody else. Beverly tells us we look at that. Correct. If we're talking about a small amount, there has to be at least something else. Correct. Wasn't there something else here? Well, I guess the something else would be the fact that you can infer he's generally a drug dealer. He generally may have engaged in a drug deal. And he admitted that. Earlier, correct. But once again, does that then assume? First of all, drug dealers can be personal users. There's no doubt. What if the man is, he sold everything out, and this isn't my personal stash? I mean, why do we have to assume that just because you're a drug dealer, you can't also have personal use? That's a great argument to a jury. But to us, we have to look at it under the College Jackson standard. And if we have the individual packaging and we have something else, isn't that enough to satisfy? Well, I think, I understand what you're saying, is it up to the trier of fact to make that determination. But I think based on how the case law is interpreted, that the state essentially has the burden to overcome the presumption that it's personal use. Because clearly this amount is a personal use. And is that enough as a matter of law to overcome that presumption? I think that's the way I would phrase it, rather than a trier of fact can decide. I mean, because what if it was just, you know, one bag that was left? I mean, are we going to say the same thing? I mean, the whole point of Robinson is that an appeals court can review, and they can overturn if it's not enough to satisfy the intent. If the solution is the trier of fact has to decide this, then why have factors at all? Why have cases reversed for lack of evidence if really it's up to the jury to decide? Because the jury can decide, hey, you know what, I believe that those two dime bags with nothing else also is for personal use. I mean, we have come up with a standard where the state does have some sort of burden beyond just we're going to leave it up to the trier of fact. If there's nothing else. We don't have time on rebuttal. Thank you. Mr. Lupa? Good morning, Your Honors, and may it please the court, counsel. My name is Stephen Lupa, and I'm an assistant state's attorney in DuPage County, and I'm appearing today on behalf of the people of the state of Illinois. The defendant in this appeal presents two distinct issues, the first involving his decision to waive a jury trial, and the second involving the sufficiency of the evidence that was used to convict him. While these issues are different, they do share one thing in common. They are both without merit and do not warrant reversal in this case. Wouldn't it have been safer for the trial judge here to just say, you know what, the statute says sign a jury waiver. If you don't sign the waiver, you're having a jury trial, sir, you have a decision to make, either after explaining it to him as he did and making sure he understood the difference between the two, saying if you really want a bench, sign it, and if you don't sign it, I'm going to call for the jury. Justice Burke, the trial court certainly could have done that. However, that would go flatly against what the defendant told the trial court that he wanted. You noted that the defendant provided a perfectly logical reason for refusing to sign the jury waiver. Perhaps he didn't want his signature on the jury waiver to be compared with the signature that was on the written statement that he said he didn't write. The trial court was very patient with the defendant throughout the entire colloquy and gave him every opportunity to sign the jury waiver. So by doing what you suggested as a possibility, Judge, I think that would fly in the face of exactly what the defendant said he wanted. I don't think that that would have accomplished and safeguarded the defendant's rights here. Why shouldn't he have tried one more time right before they started the trial? By all indications, based on the status date two weeks before the trial, there was nothing more the trial court could have done, whether it be two days later or two weeks later. The defendant was steadfast. He unequivocally stated that he wanted to bench-try. He unequivocally stated it multiple times. He was asked the question in several different ways. The trial court gave several different iterations of asking the defendant whether he understood his rights. Justice Zenob, as you pointed out, the trial court even held up the jury waiver and read it to the defendant line by line. The defendant still indicated that he understood his right to a trial by jury, and by doing that, he essentially adopted the written jury waiver through his statements. So there was no indication that the defendant was going to change his mind. I think maybe the trial court could have done that, but it certainly doesn't change the fact that the defendant adamantly refused to sign the jury waiver and adamantly said that he wanted a bench trial under any and all circumstances. And, Justice Burke, to a point that you raised earlier, the Constitution certainly protects and safeguards the right to a trial by jury, but the right to a trial by jury also includes the right to waive a trial by jury, and that's stated in the Bannister case, which I cited toward the beginning of Issue 1. And when we go into the language of 115-1, certainly it indicates that all trials shall be by jury unless the defendant waives the jury trial in writing. And we're not shying away from that requirement. That is what the statute says. But as Mr. Dvorak notes and as I note in my brief, that statute has been interpreted by people versus tools. That is an Illinois Supreme Court case. That is an authoritative case. And the case indicates that the writing requirement is not dispositive. It is a prophylactic rule, and the purpose of that rule is to ensure that the waiver is knowing and voluntary. If the record indicates that the waiver is knowing and voluntary, then the purpose of the writing requirement has been satisfied and no more is required. And I think the upshot of the case, I quote this toward the end of Section 1, and I'm quoting directly from tools. While the written waiver requirement is easy of application and should be complied with in every case, again, we're not shying away from that. We hold that the failure to do so does not result in reversal so long as the defendant's waiver was made understandably. And here, again, not to belabor the point, the defendant repeatedly and unambiguously requested a bench trial. There was an extensive colloquy with the trial court. This was not a cursory colloquy that occurred in tools that the Supreme Court nonetheless upheld. The trial court thoughtfully explained what a jury trial was. It explained how a jury is selected. It explained that a jury's verdict must be unanimous among all 12 members. And the defendant stated yes, unequivocally yes, after each and every admonishment that the trial gave. If we look at the intersection between tools and Bannister, would it not then have been a violation of the defendant's right to waive his jury trial? If the trial court had proceeded in the fashion that I talked about earlier? I'm sorry, could you? I mean, when you talk about Bannister. Yes. You have a right to waive the jury. Yes. That's a right that you have. And tools says you don't need the written waiver, as long as it's a knowing and voluntary waiver. Even though it's a statutory requirement, you don't need it. So with the intersection of those two cases, would it not have been a violation of the defendant's rights to proceed in the fashion that I said earlier? Which is where the trial judge said, if you don't sign this form, I'm picking a jury. I would submit that that would violate that. Well, but earlier you said that the trial judge could have done that. Perhaps I misspoke, Your Honor, but I do think that it would have violated the defendant's rights to proceed to a jury trial, given the circumstances here. This is a case where it has very practical ramifications, because this stuff happens every day in trial courts. So a trial judge needs to know, if the person refuses to sign it, am I violating his rights by calling for a jury? Or am I violating his rights by letting him waive it without signing a written waiver? I mean, it's a very practical thing. A lot of times we don't get very practical questions here. We've got one. I understand, Your Honor's question. I think under these circumstances, given the defendant's ardent refusal to sign it, his ardent insistence to proceed to a bench trial, I think it would have violated the defendant's rights to proceed to a bench trial. I don't know what more the trial court could have done to obtain a written jury waiver other than to force him to sign a jury waiver under compulsion. That would have violated the defendant's rights as well. So I think what the trial court here did was appropriate. And I think that no more was required. And I think, Justice Spence, I think you mentioned invited error. I certainly see the parallels there. I understand what you're saying. And I think, I agree, the defendant should not be allowed to take advantage of his own stubbornness in this case. I talk about in my brief the sort of future precedent that it would set if the defendant would be able to secure an automatic reversal just by refusing to sign a written jury waiver. And perhaps if the proper remedy were to proceed to a jury trial, despite the defendant's insistence that he not have a jury trial, I think, well, certainly that's not the proper remedy, but the defendant could then delay his trial indefinitely until the trial court made a decision. And, Your Honor, finally, I don't think there's any significance to the fact that the jury waiver was obtained two weeks before trial. Mr. Dvorak mentioned that a little bit today. I don't think there's any authority that says that the trial court has to revisit the issue again on the day of trial if the defendant has previously knowingly and understandingly waived that right to a jury trial. Your Honor, turning to the second issue, I know Your Honors are familiar with the standard. The evidence must be viewed in the light most favorable to the prosecution, and the court must determine whether any rational trier effect could have found the elements beyond a reasonable doubt. And the only element in dispute here is the intent to deliver the cocaine that was found in the defendant's sock. Well, how is the cell phone that was found on him helpful, given the fact that everybody today has cell phones? And as counsel argued, how do we know that these nine bags stored in a shoe weren't for his personal use? Well, Your Honor, there's a lot of circumstantial evidence that proves that issue. I'm sorry, intent is rarely proven with direct evidence. We have to rely on circumstantial evidence. To your first point about the cell phone, it certainly doesn't get us across the gap, but it's just one more piece in the puzzle that gets us there to intent to deliver. Certainly, everyone has a cell phone. I'd be surprised if anyone in this room did not have a cell phone. But based on the location where it was stored, which was in the same sock that the cocaine was recovered from, I mean, again, the trier effect can draw reasonable inferences from the evidence. Certainly, I would submit it's reasonable to infer that most people store their cell phones in their pockets, in their purses, things like that. I think the trial court could have found, well, I don't think most people put their cell phones in their socks. Certainly not next to nine individually wrapped bags of cocaine. So I think what I'm arguing there is that the proximity, not the fact of the cell phone itself, but the proximity of the cell phone to the contraband that the defendant had the intent to deliver, I think is just one more piece of evidence that circumstantially gets us to where we need to be. And that's not all. Certainly, you even have to go to proximity, really, in the sense that we all have cash. I mean, we're much less of a cash society now than we were 10 years ago. But we all still have a few dollars or walking around money or whatever. So it in and of itself is not illegal. Yes. But it's certainly a factor, one of multiple factors that can be considered. Yes, Your Honor. By the trier effect. I would completely agree. It's the trier effect who pieces all that together, then it makes the decision. Yes, Your Honor. So it is one of the pieces that gets us there. But that's not all we have. We have the individual wrapping. We have the cell phone. We also have the defendant's own statements. The defendant tells Special Agent Pirtle that he sells cocaine to six customers. He says he comes to DuPage County to sell cocaine. He says he's a middleman who sells crack cocaine to his friends. He tells Special Agent Caldwell, after the September transaction, call me any time if you need more crack cocaine. Those are the statements of a drug dealer. Those are the statements of a person who sells crack cocaine. And that is just one more piece of evidence that the court can consider to prove the intent to deliver. And I think most importantly, though, we have the other crimes evidence, the evidence that was admitted under 404B, which is all but ignored by the defense in the opening brief. We have evidence here that the defendant previously delivered cocaine to Special Agent Caldwell from his sock. He reached down to his sock or shoe area. The special agent testified that there was no contraband there beforehand. And he reached out and he grabbed cocaine. And he delivered it to Special Agent Caldwell on that September date. These are the exact same circumstances, same gas station. It was in Agent Caldwell's truck. It was just one month earlier. And based on that evidence, it's not propensity evidence, but it is reasonable for the trier effect to infer that the defendant stores cocaine that he intends to sell in his sock. That is a reasonable inference. And the standard is not that we disprove all theories that are consistent with innocence. Certainly, you know, Mr. Dvorak argues that, well, drug dealers can also consume their product. We don't know for sure. But the standard is beyond a reasonable doubt. And the jury, based on the other crimes evidence, it was certainly reasonable to infer that the defendant stores the product that he wants to sell in his sock. Defense counsel, for his part, he focuses on a lot of the evidence that was not presented at trial. He talks about the fact that there are no guns here, there's no large amounts of cash here, things of that nature.  Bush talks about Robinson, and Bush sort of, I guess, chastised the defense for what it called the mistaken belief that the absence of certain evidence precludes a finding of intent to deliver. And I quote it right at the end of my brief, page 328 of Bush. It's a quote that I pulled from the case. I really liked it. The defendant may not be the armed, cash-wielding, high-volume drug dealer compared to other cases like Robinson, but he's still that. And we're not shying away from the fact that it was a small amount of cocaine that was recovered from the sock. It was .138 grams. However, based on the packaging, based on the proximity of the cell phone, based on the defendant's own statements about him being a drug dealer, based on the other crimes evidence of delivery from his sock, the evidence is all there. The state proved it beyond a reasonable doubt. And certainly any rational trier of facts could have found that the defendant intended to deliver the cocaine from the sock. Your Honor, if there are no further questions, I would respectfully ask that you affirm the judgment of the trial court below. Thank you. Thank you for your time. Mr. DeGora. Your Honors, perhaps with regard to the second issue, I think I should reframe and refocus this. And that would be Mr. Thomas is not charged with being a drug dealer. There's no such thing as that charge. He's not charged with past delivery, even if that delivery was ten minutes ago or a half hour ago or two years ago. He's charged with the future tense crime, and that is possession with the future intent to deliver. Okay. That's why we have to look at small personal use amounts with such care, because if you have a large amount that's not consistent with personal use, then it's very easy to then say, well, of course he's not going to consume five ounces of cocaine, you know, and he's got scales, et cetera. But when we have nine personal use bags and we're using past drug dealing, past delivery to say future use, basically we're saying we have to say that I realize the standard is not anymore eliminate all hypotheses of innocence. However, certainly you still have to overcome reasonable doubt, which is no small thing. And that is a legal matter that can be reviewed on appeal. How do we know a drug dealer who's a middleman in particular? Oh, I'm going to deliver X amount of drugs to my guy, and I'm keeping a small amount for myself. It basically conclusively says you must, you cannot possibly be using this for personal use because you're a drug dealer. Is your argument that when we're dealing with small amounts of narcotics, that that makes prior deliveries totally irrelevant? I practically, I mean, I don't really see any real use in saying that because you delivered in the past that this personal, that the small amount must not be for personal use. That's really what we're saying is, did they prove beyond reasonable doubt that it couldn't be for personal use? That's really, I think, the way it should be framed. Well, we don't know in the record that he used, that he was a user. He might have just been a seller. Maybe that's, might have been highly unlikely, but I mean, there isn't any evidence in the record. There is evidence in the record, however, that he did previously sell. So we have to carefully, as you admonish, scrutinize the record here to see what evidence we do have. Well, I think, I think in the case law regarding personal use, I have not examined every single case, but I can imagine there's probably not one single case, or maybe there's one, that talks about the personal use of the defendant. Okay. Because that's really not required to show that he's a personal user. It's the opposite. You have to show he's not, this is not for personal use. So I think the fact that there is an absence of evidence that he was a personal user really doesn't get us anywhere. So, now, regarding the first issue, Justice Burke, I think he sort of nailed it on the head, as far as you've got this sort of really difficult choice a judge has to make. Okay, if I proceed to a jury, does that then violate his right to a bench trial? If I don't, is it right, you know, if I accept this oral waiver, does it violate his right to a jury trial? Okay. And essentially, I think one way of looking at it is it violates his constitutional right one way or the other, and we have to choose which is the best way. Okay. That's one way of looking at it, and I think if we had to do it that way, I would come down to the side of because it's presumed that you want a jury, that it was error to not give him a jury. Okay. However, there's also a third way here, if we want to get super practical here, and the practical application here is you explain that difficult choice to the defendant and say, we haven't started a jury trial yet. This thing isn't set for trial yet. I'm going to make you make that choice on the day of trial. On the day of trial, you're going to decide, bench or a jury, if you don't put it in writing, you're going to a jury trial. That's the practical way to do the solution, and that's the significance of it not happening on the day of the trial. Thank you. I suppose if the trial judge got really creative, he could have had him put an X on the jury waiver indicating he didn't move his signature, that he didn't want to give his signature for reasons of comparison with the written statement. Correct. The way that counsel articulated it is more logical than how he articulated it, so I think it's a bit of speculation to say that's what his reason was. That's not how I took his reasoning at all. How did you take it? Because it is a little unclear as to what the defendant meant by that. How did you take it? Having dealt with many clients like Mr. Thomas in the past, I took it as an irrational conspiracy theory that everyone's out to get me. I did not take it as a rational view of, well, they could use this as a comparison. No, but my question is how did you view it as where he said my signature got up on there and I didn't put it there? Where? Is the signature already on the jury waiver that is being handed to him, or was the signature on another document, presumably the written statement? I think he was saying that the police essentially forged my signature on the confession, and therefore I don't trust giving any person authority my signature. That's how I took it. If the judge had asked him to just initial it, that would have been sufficient, right? Yeah, and then if the concern that the counsel had about comparing the signatures, sure, that would do a solution too. And I understand that it's difficult to reverse a conviction based on, you know, the absence of a defendant, but at the same time, I think sending a clear message to the trial courts that, you know, this is so important, that this really is the way that it has to be done, I think is important. Thank you. Thank you. At this time, the Court would like to thank counsel for their arguments. We'll take the case under advisement and render a decision in due course.